IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-1586-GBW-SRF |
| ) | |
| EQUINITI TRUST COMPANY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Presently before the court in this civil action for breach of contract, violations of the Uniform Commercial Code ("UCC"), and related tort claims is the motion of defendant Equiniti Trust Company ("Equiniti") to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (D.I. 23)[1] For the following reasons, I recommend that the court GRANT-IN-PART the motion to dismiss.

**I.   BACKGROUND**

This action arises from Equiniti's alleged failure to timely execute planned stock sales in January of 2020, resulting in a significantly reduced selling price due to a drop in the stock market in March of 2020. (D.I. 1 at ¶¶ 60-84) In its role as trustee of the Anadarko Petroleum Corporation Benefits Trust (the "Trust") for Occidental Petroleum Corporation ("Occidental"), plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") agreed to sell Occidental shares held by the Trust in January of 2020. (*Id.* at ¶ 6) Wells Fargo sold some of the shares itself and submitted

---

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 24, D.I. 25, D.I. 26, D.I. 27, and D.I. 30.

requests to Equiniti, Occidental's transfer agent,[2] to facilitate the sale of the remaining shares. (*Id.* at ¶¶ 28, 39, 42-45)

The complaint alleges that Equiniti failed to timely register transfers and execute sales of Occidental stock in response to some of Wells Fargo's requests. (*Id.* at ¶¶ 60-80) As a result, Wells Fargo transferred the remaining Occidental stock to another entity for liquidation, and the stock was sold without Equiniti's involvement on March 20, 2020. (*Id.* at ¶¶ 81-84) Wells Fargo received a share price of about $45 per share for stock sold in January of 2020, whereas the shares sold in March of 2020 went for $9.98 per share. (*Id.* at ¶¶ 42-43, 56, 58, 84)

On April 6, 2021, Occidental sued Wells Fargo in the Southern District of Texas (the "Texas Action"), asserting causes of action for breach of contract, breach of fiduciary duty, and indemnity, and seeking the recovery of more than $38 million in damages resulting from the delayed sale of the shares.[3] (*Id.* at ¶ 85) Wells Fargo moved to dismiss two of the three causes of action, answered Occidental's claim for breach of contract, asserted a counterclaim against Occidental, and filed a third-party complaint against Equiniti on September 6, 2021. (*Id.* at ¶¶ 85-86); *see Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, C.A. No. 4:21-1126, D.I. 24, D.I. 25, D.I. 27 (S.D. Tex. Sept. 6, 2021). On November 30, 2021, the court dismissed Occidental's causes of action for breach of fiduciary duty and indemnity and Wells Fargo's UCC

---

[2] Paragraph 15 of the complaint defines a "transfer agent" as "a shareholder record keeper for public and private companies" whose "role encompasses an extensive range of functions necessary to service investors, including the maintenance of a company's shareholder database, the issuance and cancelation of stock, the transfer of shares in accordance with federal and state securities regulations, the replacement of lost certificates, the payment of cash and stock dividends to investors, the processing of corporate actions, such as stock splits and dividends, the safeguarding of funds and securities against fraud and theft, and other related functions." (D.I. 1 at ¶ 15)

[3] Because Equiniti argues that this suit is barred by claim and issue preclusion, the court may take judicial notice of the entirety of the Texas Action's record. *Farzan v. J.P. Morgan Chase Bank, N.A.*, 2022 WL 17336211, at *1 n.2 (3d Cir. Nov. 30, 2022).

2

counterclaim against Occidental from the Texas Action. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.* ("*Occidental I*"), 573 F. Supp. 3d 1161, 1167-73 (S.D. Tex. 2021).

After the court's November 30 decision in the Texas Action, Occidental filed a second amended complaint and Wells Fargo filed an answer and counterclaims to the second amended complaint, as well as an amended third-party complaint. *See Occidental*, C.A. No. 4:21-1126, D.I. 55, D.I. 62, D.I. 65. The amended third-party complaint asserted claims for negligence, breach of contract, contribution, and violations of UCC §§ 8-401 and 8-407. (D.I. 1 at ¶ 86); *see Occidental*, C.A. No. 4:21-1126, D.I. 55 at ¶¶ 69-107. Wells Fargo also asserted an affirmative defense that Occidental's claims were barred by the prior material breach of Equiniti, and a counterclaim that Occidental was vicariously liable for any losses resulting from Equiniti's negligence. (D.I. 1 at ¶ 86); *see Occidental*, C.A. No. 4:21-1126, D.I. 65 at ¶¶ 62, 69-79.

On June 21, 2022, Wells Fargo's third-party complaint against Equiniti was dismissed from the Texas Action for lack of personal jurisdiction. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.* ("*Occidental II*"), 2022 WL 2223045, at *1 (S.D. Tex. June 21, 2022). Two months later, the Texas court granted summary judgment in favor of Occidental, holding that Wells Fargo was liable for breaching two contracts, and Wells Fargo's counterclaim against Occidental for Equiniti's negligence should be dismissed. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.* ("*Occidental III*"), 622 F. Supp. 3d 495, 499-500 (S.D. Tex. Aug. 18, 2022). In May of 2023, the Texas court granted Occidental's motion for summary judgment on damages and entered a $38 million final judgment against Wells Fargo. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.* ("*Occidental IV*"), 2023 WL 3739083, at *11 (S.D. Tex. May 31, 2023). The Texas court subsequently awarded attorneys' fees to Occidental, rejecting Wells Fargo's argument that Occidental should not be permitted to recover fees for

3

defending against Wells Fargo's counterclaim. (D.I. 30, Ex. A at 5) ("[Occidental] was required to rebut Wells Fargo's counterclaim and affirmative defense in order to prevail on its breach of contract claim.").

Wells Fargo brought the instant suit against Equiniti on December 13, 2022, alleging causes of action for negligent misrepresentation (Count I), negligence (Count II), breach of contract (Count III), contribution (Count IV), violations of UCC §§ 8-401 and 8-407 (Count V), and contractual indemnification (Count VI). (D.I. 1 at ¶¶ 91-152) Equiniti moved to dismiss the complaint in its entirety for failure to state a claim on July 20, 2023. (D.I. 23) After the motion was fully briefed, the case was referred to the undersigned judicial officer to hear and resolve all pre-trial matters through expert discovery. (D.I. 31)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### III. DISCUSSION

In support of its motion to dismiss, Equiniti argues that all six causes of action in the complaint should be dismissed under the doctrines of claim or issue preclusion. (D.I. 24 at 9-11) Even if the court determines that Wells Fargo's claims are not precluded, Equiniti contends that Counts I, II, and IV are barred by Delaware's economic loss doctrine, and Counts III, V, and VI fail to sufficiently state a claim. (*Id.* at 12-20) There is no dispute that Texas law governs Equiniti's arguments for claim and issue preclusion, and Delaware law governs the remaining issues raised in Equiniti's motion to dismiss. (*Id.* at 8; D.I. 26 at 4 n.3)

#### A. Claim Preclusion (Counts I to V)

Equiniti argues that Counts I to V should be dismissed with prejudice under the doctrine of claim preclusion because they are subject to the final judgment entered in the Texas Action. (D.I. 24 at 9-10) Claim preclusion "bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (citing cases). The party seeking dismissal of claims under the doctrine must establish each of the following elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of

parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Id.* (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). According to Equiniti, all three elements are satisfied in this instance because Wells Fargo is a party to both actions, the Texas Action was fully and fairly litigated, and Counts I to V in this action were or could have been litigated in the Texas Action. (D.I. 24 at 9-10)

Wells Fargo responds that there is no identity of the parties because Equiniti was not a party to the Texas Action. (D.I. 26 at 3-4) Although Equiniti was named as a party in Wells Fargo's third-party complaint in the Texas Action, the Texas court dismissed that complaint for lack of personal jurisdiction. *Occidental II*, 2022 WL 2223045, at *1. Equiniti's dismissal on jurisdictional grounds "does not preclude a second action asserting the same claims in a court that can establish personal jurisdiction based on issues that were not decided in the first action." *Nguyen v. Desai*, 132 S.W.3d 115, 118 (Tex. App. 2004). Equiniti confirms it "does not assert that *its* dismissal from the Texas Action precludes further action in this Court." (D.I. 24 at 10 n.6) Because Wells Fargo's third-party claims against Equiniti could not be heard in the Texas Action for lack of jurisdiction, it would not serve the "concerns of claim preclusion—protecting litigants from duplicative claims and promoting judicial economy—" to bar Wells Fargo's claims against Equiniti in the instant action. *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 971 (S.D. Tex. 2014) (holding that a prior case in which the plaintiff was a defendant and counterclaimant did not preclude its claims against an entity that was not a party to the earlier suit).

Moreover, the record before the court does not establish that Equiniti was in privity with Occidental in the Texas Action. Under Texas law, "[p]arties may be in privity if (1) they control

an action, (2) their interests can be represented by a party to the action, or (3) they are successors in interest." *Rosetta Res.*, 645 S.W.3d at 225 (quoting *Amstadt*, 919 S.W.2d at 653) (internal quotation marks omitted). Equiniti does not argue that any of these considerations was present in its relationship with Occidental in the Texas Action. Instead, Equiniti argues that privity exists due to the principal / agent relationship between Occidental and Equiniti. (D.I. 27 at 4-5) But the existence of a principal / agent relationship is not enough to establish privity if it is not also accompanied by an identity of interests. *See RenewData Corp. v. eMag Sols., LLC*, 2009 WL 1255583, at *4 (Tex. App. May 6, 2009) (finding no privity and no identity of interests where the lawsuit sought to hold the defendant liable for its own conduct, rather than for the conduct of its employee). Equiniti relies on *Moreno v. Irons*, but the case does not establish a *per se* rule that the existence of a principal / agent relationship is enough to prove privity for purposes of claim preclusion. 2000 WL 463728, at *2-3 (Tex. App. Apr. 25, 2000). Instead, the court applied the doctrine of *respondeat superior* to find privity between an employee and his employer, resulting in the employer's vicarious liability for the wrongful acts of the employee which occurred within the scope of the employment. *Id.*

In addition, Wells Fargo's claims against Equiniti in this action are not precluded because there was no final judgment on the merits of those claims in the Texas Action. No claims against Equiniti were adjudicated to final judgment in the Texas Action because the Texas court determined that it lacked personal jurisdiction over Equiniti. *Occidental II*, 2022 WL 2223045, at *1. Moreover, Equiniti presents no substantive argument to suggest that Counts I, III, IV, and V of the complaint mirror Wells Fargo's counterclaim against Occidental in the Texas Action, or that any of those claims were the subject of a final judgment in the Texas Action.

Equiniti emphasizes the similarities between Wells Fargo's negligence-based counterclaim and affirmative defense against Occidental in the Texas Action and its negligence claim against Equiniti at Count II of the complaint in this case. (D.I. 24 at 10) A comparison between Wells Fargo's negligence claim against Equiniti at Count II of the complaint in the instant action and Wells Fargo's first counterclaim for vicarious liability against Occidental in the Texas Action confirms that the allegations are nearly identical. (*Compare* D.I. 1 at ¶¶ 105-11 *with* S.D. Tex. C.A. No. 4:21-1126, D.I. 65 at ¶¶ 70-79)

However, Equiniti has not established that the Texas court issued a final judgment on the counterclaim. On summary judgment, the court ruled in favor of Occidental on its breach of contract claim against Wells Fargo based on evidence "before [Wells Fargo's] communications with Equiniti began." *Occidental III*, 622 F. Supp. 3d at 517. The Texas court's discussion of Wells Fargo's counterclaim against Occidental for Equiniti's negligence is relegated to a footnote stating that "Wells Fargo has not alleged that Equiniti owed it a duty under Texas law." *Id.* at 517 n.1. This dictum does not amount to a final judgment on the merits of Wells Fargo's negligence counterclaim. *See Standish v. Huddle*, 1996 WL 631778, at *2 (Tex. App. Oct. 31, 1996) (declining to apply claim preclusion based on a judgment "rendered without any specific findings or determinations[.]"); *see also Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it." (internal quotation marks and citations omitted)).

Because there is no identity of the parties and no final judgment in the Texas Action on the claims now before this court, the doctrine of claim preclusion does not bar Counts I to V of

8

Wells Fargo's complaint against Equiniti. Consequently, I recommend that the court deny Equiniti's motion to dismiss Counts I to V under the doctrine of claim preclusion.

### B. Issue Preclusion (Count VI)

Equiniti also argues that Count VI of the complaint, which seeks contractual indemnification from Equiniti, is barred by the doctrine of issue preclusion. (D.I. 24 at 10-11) Issue preclusion "bars relitigation of an issue if a party seeking the benefit of a judgment proves (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were *essential to the judgment* in the first action; and (3) the parties were cast as adversaries in the first action." *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (emphasis in original; internal citations and quotation marks omitted). According to Equiniti, the Texas court found that Wells Fargo's liability to Occidental was unrelated to Equiniti's role as transfer agent and dismissed Wells Fargo's counterclaim against Occidental with prejudice. (D.I. 27 at 6) Wells Fargo responds that its indemnification claim does not require relitigation of any of the facts essential to the damages determination in the Texas Action. (D.I. 26 at 11-12)

Equiniti has not established that Wells Fargo is precluded from seeking indemnification in this action for the damages award entered against it in the Texas Action. For the reasons previously explained at § III.A, *supra*, the court in the Texas Action did not consider Equiniti's alleged negligence as a factor relevant to determining Wells Fargo's liability to Occidental. The Texas court expressly rejected Wells Fargo's position that Equiniti's negligence "create[d] a factual dispute material to determining that Wells Fargo breached its agreement to sell all the shares in specific increments" within a timeframe preceding Equiniti's involvement. *Occidental III*, 622 F. Supp. 3d at 514. Thus, the facts regarding Equiniti's alleged negligence and its

indemnification obligations to Wells Fargo were not relevant to the Texas court's judgment of Wells Fargo's liability to Occidental. For these reasons, I recommend that the court deny Equiniti's motion to dismiss Count VI under the doctrine of issue preclusion.

### C. Economic Loss Doctrine (Counts I, II, and IV)

"The economic loss doctrine is a judicially created doctrine that allows a party to recover in tort only if losses are accompanied by bodily harm or property damage; in other words, the doctrine prevents plaintiffs from recovering in tort for losses suffered that are solely economic in nature." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012). Here, Equiniti moves to dismiss Wells Fargo's negligence-based claims at Counts I, II, and IV of the complaint under the economic loss doctrine because the damages described in the complaint are limited to financial losses resulting from Equiniti's alleged breach of its contractual obligations. (D.I. 24 at 12-13) Wells Fargo does not identify any injury to person or property alleged in the complaint. Instead, Wells Fargo maintains that the negligence-based causes of action aver Equiniti breached duties independent of its contractual obligations. (D.I. 26 at 13-14)

I recommend that the court grant Equiniti's motion to dismiss Counts II and IV under the economic loss doctrine because the complaint identifies only monetary losses associated with these claims. *See Bray v. Gamestop Corp.*, C.A. No. 17-1365-JEJ, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) ("The economic loss doctrine precludes negligence claims for losses that are purely monetary or economic, that is, divorced from any injury to person or property."); *see also Del. State Univ. v. Thomas Co., Inc.*, C.A. No. 15-1144-LPS-MPT, 2020 WL 6799605, at *37 (D. Del. Nov. 19, 2020) ("The economic loss doctrine prohibits a party who has suffered only economic loss from maintaining a tort claim: rather it must sue in contract."). Count II of

the complaint alleges that Equiniti is liable to the Trust for "losses resulting from Equiniti's breach of its duties in the transfer, registration, and sale of the Occidental shares." (D.I. 1 at ¶¶ 110-11) Wells Fargo's contribution claim at Count IV similarly alleges that Wells Fargo should receive contribution from Equiniti for money damages Wells Fargo owes to Occidental or Anadarko due to the delayed sales of Occidental stock between January and March 2020. (*Id.* at ¶¶ 132-33)

The damages associated with Wells Fargo's negligence-based claims are the monetary losses suffered by the Trust due to the untimely sale of the Occidental shares. (*Id.* at ¶¶ 110-11, 132-33) This mirrors the economic harm associated with the breach of contract claim: "Equiniti is thus liable to the Trust for all damages the Trust suffered, in an amount to be proven at trial[.]" (D.I. 1 at ¶ 124) Because the complaint alleges only financial losses that can be remedied in contract, Counts II and IV are barred under the economic loss doctrine. *See Bray*, 2018 WL 11226516, at *4.

Wells Fargo argues that an exception to the economic loss doctrine in the Restatement (Second) of Torts applies to the negligent misrepresentation claim at Count I of the complaint.[4] (D.I. 26 at 15-16) The Restatement provides that

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552; *see also Livery Coach Sols., L.L.C. v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 646 (D. Del. 2017). The exception requires a showing that (1) the

---

[4] Wells Fargo does not identify an exception to the economic loss doctrine that would apply to Counts II or IV.

11

defendant supplied information to the plaintiff to use in business transactions with third parties, and (2) the defendant is in the business of supplying such information. *Livery Coach Sols.*, 245 F. Supp. 3d at 646.

Equiniti contends that the second element is not satisfied because the information it supplied to Wells Fargo was ancillary to the sale of a product or service, and Equiniti is not in the business of supplying such information. (D.I. 24 at 14) But the question of whether Equiniti was in the business of supplying such information raises disputed issues of fact. *See Kuhn Constr.*, 844 F. Supp. 2d at 528 (explaining that the issue of whether a defendant falls within an exception to the economic loss doctrine can be resolved on a motion to dismiss only "when the complaint unambiguously places a defendant outside of the exception."). The complaint alleges that Equiniti "is in the business of supplying information for the guidance of shareholders for use in business transactions with third parties," including in the transfer of Occidental shares. (D.I. 1 at ¶ 95) Construing the pleaded allegations in the light most favorable to Wells Fargo, it is plausible that the negligent misrepresentation claim may fall within the exception to the economic loss doctrine. *See RLI Ins. Co. v. Indian River Sch. Dist.*, C.A. No. 05-858-JJF, 2006 WL 1749069, at *3 (D. Del. June 20, 2006) (noting the determination that a defendant is not in the business of supplying information is generally made on summary judgment and declining to definitively decide the issue on a motion to dismiss). Consequently, I recommend that the court deny Equiniti's motion to dismiss Count I.

In a footnote, Equiniti alleges that Wells Fargo's negligent misrepresentation claim should be dismissed because it does not allege a "special relationship" between Equiniti and Wells Fargo. (D.I. 24 at 15 n.11) "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]." *Higgins v. Bayada Home Health Care Inc.*, 62

F.4th 755, 763 (3d Cir. 2023) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

### D. Breach of Contract (Count III)

Equiniti also seeks dismissal of Wells Fargo's breach of contract claim, arguing that the pleaded allegations made "on information and belief" are too vague to sustain the claim. (D.I. 24 at 15-16) But the breach of contract allegations are sufficient to satisfy the Rule 8 standard: (1) the existence of a contract in the form of Equiniti's terms and conditions, (D.I. 1 at ¶ 113); (2) Equiniti's alleged breach of the terms and conditions by executing an unauthorized sale and failing to timely execute and register the transfers and sales of the remaining Occidental stock, (*id.* at ¶ 119); and (3) damages suffered by the Trust due to the alleged breach, (*id.* at ¶¶ 120-21); *see S'holder Representative Servs. LLC v. Medidata Sols., Inc.*, C.A. No. 19-1312-RGA-CJB, 2020 WL 972618, at *2 (D. Del. Feb. 24, 2020) (setting forth elements of a cause of action for breach of contract under Delaware law). The complaint avers "sufficient factual allegations to set out a plausible claim for breach of contract . . . regardless of whether it also included the words 'upon information and belief' in those same paragraphs." *Id.* at *2 n.3.

Count III of the complaint also sufficiently alleges breach of an implied covenant by identifying Equiniti's implied obligation to "process the Transaction Requests in a timely manner and with diligence and care[.]" (D.I. 1 at ¶ 114) "The implied covenant applies 'when a contract is . . . silent with respect to the contested issue. . . . [and] the parties' expectations on the issue were so fundamental that they clearly would not need to negotiate about nor memorialize them." *Jack v. Jack Acquisitions, Inc.*, C.A. No. 19-52-CFC, 2020 WL 4192614, at *4 (D. Del. July 21, 2020) (quoting *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *6 (Del. Super. Ct. Oct. 25, 2018)). Here, Wells Fargo plausibly alleges that Equiniti's obligation to timely execute

13

the sales of Occidental stock was implicit in the express provisions of the terms and conditions governing Equiniti's offer to sell shares for Occidental shareholders. (D.I. 1 at ¶¶ 113-14, 119) Similar claims brought in this court have withstood a motion to dismiss at the pleadings stage. *See Jack*, 2020 WL 4192614, at *4 (denying motion to dismiss claim for breach of implied covenant where express contract provision contained implicit expectation that buyers would provide timely notice); *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 582 (D. Del. 2007) (finding implied contractual obligations of reasonableness and fairness were sufficient to withstand a motion to dismiss).

For these reasons, I recommend that the court deny Equiniti's motion to dismiss Count III of the complaint.

### E. Violations of UCC §§ 8-401 and 8-407 (Count V)

Equiniti argues that Wells Fargo's cause of action under UCC §§ 8-401 and 8-407 at Count V of the complaint should be dismissed because the same charges were dismissed against Occidental in the Texas Action. (D.I. 24 at 17–19); *see Occidental I*, 573 F. Supp. 3d at 1173. As Wells Fargo explains, however, the counterclaim in the Texas Action was brought against Occidental, as opposed to Equiniti. (D.I. 26 at 18) Moreover, there is no dispute that the Texas Action did not address a cause of action under UCC § 8-407. The complaint in this action alleges that Equiniti had the sole responsibility to transfer registration and sell the Occidental shares in accordance with Wells Fargo's instructions, but Equiniti failed to perform those tasks. (D.I. 1 at ¶¶ 39, 41, 139-41) Dismissal of the counterclaim against Occidental in the Texas Action is therefore not a sufficient basis to warrant dismissal of Count V against Equiniti in the instant action. Consequently, I recommend that the court deny Equiniti's motion to dismiss Count V.

### F. Contractual Indemnification (Count VI)

Equiniti contends that Wells Fargo's contractual indemnification claim should be dismissed because Wells Fargo's liability to Occidental arose from its own breaches of its own separate contracts with Occidental, and it did not arise from Equiniti's conduct as a transfer agent. (D.I. 24 at 19-20) Equiniti also alleges that the "Assumed Liabilities" referenced in the indemnification provision of the Purchase Agreement do not encompass Wells Fargo's liability to Occidental. (*Id.*) Wells Fargo responds that the breach of its contractual duties to Occidental was the direct result of Equiniti's failure to carry out its duties as Occidental's transfer agent. (D.I. 26 at 19-20)

I recommend that the court deny Equiniti's motion to dismiss the contractual indemnification claim at Count VI of the complaint. The complaint alleges that Equiniti's delay in selling the Occidental stock directly caused Wells Fargo to breach its email agreement with Occidental. (D.I. 1 at ¶¶ 89, 145-52) The parties' disputes about the scope of terms in the Purchase Agreement, such as "Assumed Liabilities" and "Business," are not appropriately resolved on a motion to dismiss. *See Doehler N. Am., Inc. v. Davis*, C.A. No. 22-501-RGA, 2023 WL 3569775, at *5 (D. Del. May 19, 2023) (explaining that "[d]ismissal is proper only if the defendant['s] interpretation is the *only* reasonable construction as a matter of law." (quoting *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *5 (Del. Super. Ct. Mar. 3, 2016)).

## IV. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART the motion to dismiss. (D.I. 23) Specifically, I recommend that the court GRANT the motion with respect to Counts II and IV of the complaint, and DENY the motion in all other respects.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed, R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: April 4, 2024

Sherry R. Fallon
United States Magistrate Judge