IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WELLS FARGO BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> EQUINITI TRUST COMPANY, <br><br> Defendant. | Civil Action No. 22-1586-GBW-SRF |

## MEMORANDUM ORDER

Pending before the Court is Magistrate Judge Fallon's Report and Recommendation ("R&R"), dated April 4, 2024 (D.I. 32), recommending that the Court GRANT-IN-PART and DENY-IN-PART Defendant Equiniti Trust Company's ("Defendant" or "Equiniti") Motion to Dismiss (D.I. 23) as follows: (1) deny Defendant's Motion to Dismiss Counts I to V under the doctrine of claim preclusion; (2) deny Defendant's Motion to Dismiss Count VI under the doctrine of issue preclusion; (3) grant Defendant's Motion to Dismiss Counts II and IV under the economic loss doctrine; (4) deny Defendant's Motion to Dismiss the breach of contract claim at Count III; (5) deny Defendant's Motion to Dismiss as to the cause of action under UCC §§ 8-401 and 8-407 at Count V; and (6) deny Defendant's Motion to Dismiss the contractual indemnification claim at Count VI. Plaintiff Wells Fargo Bank, N.A. ("Plaintiff" or "Wells Fargo") submits a partial objection challenging the R&R's recommendation that the Court dismiss Counts II and IV. D.I. 33. Defendant submits a partial objection challenging the R&R's denial of the dismissal of: (1) Counts I to IV on the ground of claim preclusion; (2) Count VI on the ground of issue preclusion; and (3) the Count III claim alleging a breach of an implied covenant. D.I. 34. Having reviewed

the R&R, each party's objection, and all related briefing, the Court OVERRULES the objections and ADOPTS the R&R in whole. Accordingly, Defendants' Motion to Dismiss (D.I. 23) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in the R&R. D.I. 32.

## I. STANDARD OF REVIEW[1]

A district court may modify or set aside any part of a magistrate judge's order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b).

## II. DISCUSSION

### a. Counts I to IV Are Not Barred by Claim Preclusion.

The R&R holds that the doctrine of claim preclusion is inapplicable to Counts I to IV of the Complaint because (1) "there is no identity of the parties;" and (2) "no final judgment in the Texas Action on the claims now before this court." D.I. 32 at 5-7. Equiniti contends that the R&R is mistaken on both grounds. D.I. 34 at 3. The Court disagrees.

Like Magistrate Judge Fallon, the Court finds that there is no identity of parties in the Texas Action and this action. D.I. 32 at 5-6. Indeed, there is no dispute that Equiniti was not a party to the Texas Action. Still, Equiniti argues that there is sufficient identity between it and Occidental, the named plaintiff in the Texas Action, because "Wells Fargo tried to impute Equiniti's conduct to Occidental (based on their principal/agency relationship) in the Texas Action[]" and "Wells

---

[1] The Court writes for the benefit of the parties who are already familiar with the pertinent background facts.

Fargo specifically alleges in the Complaint that 'Equiniti acts as an agent for Occidental.'" D.I. 34 at 3 (citing D.I. 1, ¶ 30). However, neither argument is sufficient to establish privity under Texas law.

Specifically, Equiniti cannot assert privity under a principal/agent relationship between it and Occidental because, as the R&R notes, Texas law requires that the existence of a principal/agent relationship be "accompanied by an identity of interests." D.I. 32 at 7. "Under Texas law, privity is not established by the 'mere fact that persons may happen to be interested in the same question or in proving the same state of facts.'" *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 3943870, at *37 (E.D. Tex. July 25, 2019), *report and recommendation adopted*, No. 4:17CV303, 2019 WL 3934776 (E.D. Tex. Aug. 20, 2019) (internal citations omitted). Further, "some evidence demonstrating the[ir] interconnectedness" is insufficient unless the evidence shows that one party is "so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented *the same legal right*.'" *Id.* at *37-38 (internal citations omitted and emphasis added). Here, Wells Fargo's allegations against Occidental in the Texas Action are distinguishable from the allegations raised against Equiniti in this matter and thus do not support a claim that Occidental and Equiniti share an identity of interest.

Particularly, as noted by Wells Fargo, "Wells Fargo's counterclaims in Texas alleged Occidental's contractual relationship with Equiniti to state a claim against Occidental. In contrast, the current lawsuit **is based solely on Equiniti's failures and negligent misrepresentations** related to the sale of Occidental stock." D.I. 35 at 3 (emphasis added). While the allegations raised in both matters may share the same pertinent facts, this suit "asserts causes of action against [Equiniti] arising out of [*its*] independent [] activities," (i.e., its failure to carry out the sales as

3

instructed). *See RenewData Corp. v. eMag Sols., LLC*, No. 03-05-00509-CV, 2009 WL 1255583, at *4 (Tex. App. May 6, 2009). Given this distinction, the Court cannot find that Equiniti and Occidental are "so connected" such that Occidental sufficiently represented Equiniti's legal right against Wells Fargo's distinct claims in the Texas Action. *Id.*

Additionally, the Court agrees with Magistrate Judge Fallon that "Wells Fargo's claims against Equiniti in this action are not precluded because there was no final judgment on the merits of those claims in the Texas Action." D.I. 32 at 7. Wells Fargo's third-party complaint against Equiniti in the Texas Action was dismissed for lack of personal jurisdiction. Also, the Court is not persuaded that the Texas court made a final finding on Equiniti's liability merely because dictum in the Texas court's order on attorneys' fees briefly notes that "[Occidental] was required to rebut" Wells Fargo claims that Occidental was liable for Equiniti's negligence "in order to prevail on its breach of contract claim." *See id.*; D.I. 32 at 8. The Court agrees with Wells Fargo that the Texas court was seemingly recognizing that Occidental incurred additional fees to respond to Wells Fargo's negligence counterclaims and affirmative defenses, which sought to raise Equiniti's negligent conduct. D.I. 35 at 4. Moreover, the Texas court ultimately found in a footnote that Wells Fargo's allegations regarding Equiniti's negligence were "irrelevant to whether Wells Fargo breached its obligations to Occidental." *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 622 F. Supp. 3d 495, 517 n.1 (S.D. Tex. 2022).

Accordingly, the R&R's recommendation is ADOPTED, and Equiniti's Motion to Dismiss Counts I to V under the doctrine of claim preclusion is DENIED.

### b. Count VI is Not Barred by Issue Preclusion.

Count VI of the Complaint asserts a claim against Equiniti for contractual indemnification. D.I. 24 at 10-11. Equiniti moved to dismiss the claim under grounds that Wells Fargo's

4

indemnification claim was barred by the doctrine of issue preclusion. D.I. 27 at 6. Magistrate Judge Fallon disagreed, noting that "Equiniti has not established that Wells Fargo is precluded from seeking indemnification in this action for the damages award entered against it in the Texas Action" because "the court in the Texas Action did not consider Equiniti's alleged negligence as a factor relevant to determining Wells Fargo's liability to Occidental." D.I. 32 at 9. The Court agrees.

In objecting to the R&R's findings, Equiniti again relies on the Texas court's assertions in its attorneys' fees order as evidence that "Wells Fargo had a full, fair, and ultimately unavailing opportunity to litigate Equiniti's conduct when it pursued those same claims against Equiniti's principal, Occidental." D.I. 34 at 2. However, Equiniti's claim that the Texas court ruled on negligence is rebutted by the court's unequivocal rejection of Wells Fargo's position that Equiniti's negligence "create[d] a factual dispute material to determining that Wells Fargo breached its agreement to sell all the shares in specific instruments." D.I. 32 at 9 (citing *Occidental Petroleum Corp.*, 622 F. Supp. 3d at 514). Accordingly, the Court ADOPTS the R&R's recommendation and DENIES Equiniti's motion to dismiss Count VI under the doctrine of issue preclusion.

   c. **Counts II and IV Fail Under the Economic Loss Doctrine.**

The R&R recommends that this Court dismiss Counts II and IV, two of Wells Fargo's negligence-based claims, under the doctrine of economic loss. D.I. 32 at 10-13. According to Magistrate Judge Fallon, the claims fail "because the complaint identifies only monetary losses associated with these claims." *Id.* at 10; *Bray v. Gamestop Corp.*, C.A. No. 17-1365-JEJ, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) ("The economic loss doctrine precludes negligence claims for losses that are purely monetary or economic, that is, divorced from any injury to person or property.").

Wells Fargo objects to the R&R on grounds that it "does not [] address Wells Fargo's separate argument that Equiniti's breach of duties *independent of* contractual duties is a 'threshold issue' for determining applicability of the economic loss doctrine." D.I. 33 at 4 (emphasis in original). According to Wells Fargo, Counts II and IV each arise from two non-contractual obligations owed by Equiniti, namely "Equiniti's "extra-contractual duties to Wells Fargo to provide diligent and continuous attention to the transfer and sales requests," and Equiniti's "non-contractual duties created by SEC regulations." *Id.* The Court disagrees.

As to Wells Fargo's first alleged non-contractual obligation, the Court agrees with Equiniti that its duties to provide diligent and continuous attention to the transfer and sales requests were not independent of Equiniti's contractual duties to sell the shares. D.I. 36 at 2. Indeed, the Complaint alleges that Equiniti breached its contractual duties by failing to "to timely execute and register the transfers and sales of the remainder of the Occidental stock as Wells Fargo requested on behalf of the Trust on January 9, 2020." *See* D.I. 1, ¶ 119. And the harm that Wells Fargo alleges stems from this "extra-contractual" duty "mirrors the economic harm associated with [Wells Fargo's] breach of contract claim." D.I. 32 at 11. Thus, Wells Fargo cannot rely on Equiniti's obligations to provide diligent and continuous attention to the transfer and sales requests as grounds for its negligence-based claims in Counts II and IV.

The Court also agrees with Equiniti that Wells Fargo cannot rely on SEC regulations to support its negligence claims. D.I. 36 at 2-3. Wells Fargo contends that "under Delaware law, regulations that do not provide a private right of action may still support a negligence claim if enacted to protect the public." D.I. 33 at 5 (citing *Coardes v. Chrysler Corp.*, 785 F. Supp. 480, 481-83 (D. Del. 1992)). However, Wells Fargo's reliance on *Coardes* is misplaced, given that the court in *Coardes* sought to resolve a motion for remand. *Coardes*, 785 F. Supp. at 480-81. In

response to plaintiff's remand motion, defendant in *Coardes* argued that plaintiff's negligence claim could be heard by a federal court because "[t]he Complaint . . . alleges a violation of a federal statute as an element of a state law tort claim flowing from the fact that a violation of any statute enacted for the safety and protection of the public constitutes negligence per se under Delaware law." *Id.* at 483. In granting the motion to remand, the court noted that "[p]laintiff's reference to the [Federal law] [] is simply one theory supporting the negligence claim," and the court noted that "plaintiff[] ha[d] no private cause of action under the [particular Federal law]." *Id.* Thus, the *Coardes* court refused to allow defendant to "transform plaintiffs' state negligence action into a substantial federal question" for jurisdictional purposes. *Id.*

Unlike this matter, *Coardes* involved a question of federal jurisdiction, and neither the parties nor the court raised the economic loss doctrine. In fact, the parties in *Coardes* had no reason to consider the economic loss doctrine since, as Equiniti notes, plaintiff "was not seeking to recover for purely economic damages, but was instead seeking to recover damages for, among other things, the death of 'plaintiff's decedent,' who was allegedly killed in an accident involving a defective automobile." D.I. 36 at 2-3. Therefore, Wells Fargo cannot rely on *Coardes* to support its proposition that a "negligence per se claim based on Equiniti's regulatory violations [] states a claim that is not subject to the economic loss doctrine." D.I. 33 at 5.

Because Wells Fargo provides no other support for its argument that a negligence claim that alleges purely economic interests is exempt from the economic loss doctrine, Wells Fargo's objection to the R&R is **OVERRULED**, and Magistrate Judge Fallon's recommendation that the Court dismiss Counts II and IV pursuant to the economic loss doctrine is **GRANTED**.

### d. Wells Fargo Sufficiently Pleads a Breach of Contract Claim in Count III.

Count III of the Complaint asserts a breach of contract claim against Equiniti. D.I. 1, ¶ 113. In support of its claim, Wells Fargo alleges that "Equiniti impliedly warranted and represented that it would process the Transaction Requests in a timely manner and with diligence and care, as required by numerous federal regulations governing transfer agent conduct." *Id.*, ¶ 114. According to the Complaint, Equiniti breached its implied warranties and representations by failing "to timely execute and register the transfers and sales of the remainder of the Occidental stock as Wells Fargo requested on behalf of the Trust on January 9, 2020." *Id.*, ¶ 119.

Equiniti seeks dismissal of Count III on grounds that the Complaint relies on allegations made "on information and belief" that are too vague to sustain Wells Fargo's breach of contract claim. D.I. 24 at 15-16. Specifically, Equiniti contends that, while the Complaint alleges that the contract terms are available on Equiniti's website, the Complaint "fails to identify or recite virtually any of the terms of the alleged contract" and does not attach a copy of the contract. D.I. 34 at 8. Thus, Equiniti argues that dismissal is warranted "[i]n these circumstances where the contract and its express terms are not before the Court (nor quoted or otherwise alleged in the Complaint), [because] it is impossible for the Court to assess whether . . . the 'the express provisions of the terms and conditions' support any implied obligations" where "the 'express provisions of the terms and conditions' are unknown to the Court." *Id.* The Court disagrees.

To state a claim for breach of an implied covenant, a "plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). The Court agrees with Wells Fargo that the Complaint meets this standard by alleging that: "(1) the 'obligation implied in the contract' that Equiniti would timely process transaction requests with

8

due diligence and care [D.I. 1 at ¶114]; (2) Equiniti breached that implied obligation by botching the transaction requests [*id.* ¶¶ 117-119]; and (3) Equiniti's breaches resulted in damages [*id.* ¶¶ 120-124]." D.I. 35 at 8. While Wells Fargo neglected to attach the relevant agreement to its Complaint, Equiniti provides no support for its claim that an action for breach of an implied covenant requires that the relevant agreement is included with the complaint, and the Court declines to adopt such a strict rule.

Rather, the Court finds that Wells Fargo sufficiently pleads the existence of an agreement through which Equiniti undertook implied contractual obligations to process Wells Fargo's sales requests in a timely manner and with diligence and care, and Wells Fargo alleges that Equiniti breached its implied obligations by failing to process a sale diligently and with due care. At this stage, these allegations are sufficient to survive dismissal. *See* D.I. 32 at 13.

Accordingly, the Court OVERRULES Equiniti's objection and ADOPTS the R&R's recommendation as to Count III. Equiniti's Motion to Dismiss Count III is therefore DENIED.[2]

\*\*\*

Therefore, at Wilmington this **13th** day of June, 2024, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Fallon's Report and Recommendation, D.I. 32, is **ADOPTED**;
2. Defendant's Partial Objection to the Report and Recommendation, D.I. 33, is **OVERRULED**;

---

[2] The R&R also recommends that the Court "deny Equiniti's motion to dismiss Count V" and "deny Equiniti's motion to dismiss the contractual indemnification claim at Count VI of the Complaint. D.I. 32 at 14-15. No party objects to either recommendation. The Court, having reviewed each recommendation, agrees with Magistrate Judge Fallon's recommendation as to each claim. Accordingly, the R&R is ADOPTED and Defendant's Motion to Dismiss Count V and the indemnification claim at Count VI are DENIED.

3. Plaintiff's Partial Objection to the Report and Recommendation, D.I. 34, is **OVERRULED**; and

4. Defendant's Motion to Dismiss, D.I. 23, is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant's Motion is **GRANTED** with respect to Counts II and IV of the Complaint. Defendant's Motion is otherwise **DENIED**.

                                                GREGORY B. WILLIAMS
                                                U.S. DISTRICT JUDGE